Good morning, your honors. May the peace be with you. My name is Jixian Li. I'm representing the petitioner. In this case, the petitioner is asking for two forms of reliefs. One is an adjustment of status under the Chinese Student Protection Act. The second one is an asylum claim. I would like to address the petitioner's asylum claim first. In this case, the BIA denied the petitioner's application for asylum and withholding. In doing so, the BIA did not make an express credibility finding. In the BIA's own words, it is not necessary for us to reach a final assessment of the petitioner's credibility. All is clear in this circuit. If the BIA did not make an explicit adverse credibility finding, the petitioner will be presumed to be credible. Now, accepting the petitioner's testimony to be credible, any reasonable fact finder would be compelled to find that the petitioner's wife was forced to undergo a sterilization procedure. I'd like to ask you a question about that. If your client must be believed, then we are required to believe that his wife told him that she was forcibly sterilized. But what basis do we have to be required to believe that she, in turn, was truthfully reporting what was happening to her? In other words, there's no prohibition against considering hearsay, but why would we be required to believe the declarant as opposed to your client truthfully reciting what he had heard? Yes, Your Honor. Admitted into record is the letter from the wife who was the victim of the past persecution under the coercive population control. And the letter was admitted into record, and the judge, the immigration judge, and the BIA never questioned the value, the importance of the letter. Because it's part of the record, and since the BIA did not make an adverse credibility finding, so therefore, what is in the record must be properly credited. Since the letter is already in the record, so the letter must be given. So we have to credit that he says, this is my wife's handwriting, and this is what she told me. But I guess it's, my problem with it is how do we decide whether to believe the accuracy, not whether we should believe it, how do we decide what weight the agency is required to give hearsay that is related to a credible person? In other words, they're definitely telling us what they've heard, but how is the agency to assess whether what they've heard is true? So we have to cross-examine that. Yes. I think that the BIA has been repeatedly reminded to make an express credibility finding. So it's either the petitioner is credible or the petitioner is not credible. My question isn't about that. I'm agreeing with you that the petitioner is credible. We believe absolutely everything he said. And one of the things he said was, my wife told me this. And we believe that she told him that. But how do we know if she was telling the truth? How is the agency required to consider the truthfulness of the person who sent the letter who's not in front of the court? Because this is a, in every deportation proceedings, petitioners must be given the benefit of a doubt. Wait a minute. The person who makes the statement is never under oath. The witness who's before the BIA is under oath. So the declarant, the wife in China who talked on the telephone or write a letter or anything else, that is not, none of that is under oath. Why do we have to believe that? But petition, the letter was admitted into evidence. Petitioner swore under oath the letter was from the wife. If I got a letter from somebody that said you're going to die tomorrow, does that mean I'm going to die tomorrow? Yeah, then, because the BIA or the IJ did not question the letter, nor was the service. And nobody cross-examined the letter either. Nobody took the oath of the letter either. As a matter of evidence, it's probably the weakest possible evidence you could get. You don't have a certified medical record from a hospital. You don't have a statement from the counselor service who investigated it in China. We do have the x-ray and the medical record. And also we have the picture showing the scar from the wife's sterilization operation. But we don't have any way of knowing whether those photographs are authenticated and belong to her. But the IJ did not, as I said, the BIA did not. Now, what the BIA said was that these matters were of questionable value, and in particular they were of questionable value given the very, very poor and incredible testimony that was presented on the Chinese student claim. In other words, your client came before the IJ and BIA with completely incredible evidence on one claim. That's your Chinese student claim. And the BIA said the fact that you would present evidence that was so incredible on that claim makes it very questionable in our minds whether you've presented good evidence over here, especially when we can't verify it. We have no way of verifying this information, and you were willing to give us bad information over here, so that makes us very doubtful about this information on the other side, on the asylum claim. Well, Your Honor, assuming that the envelopes and the bank receipts were forged, just assuming that, but those have nothing to do with the asylum claim. Except that your client is willing to put on bad evidence before the BIA. Well, Your Honor. You began, Mr. Li, with the statement that there was nothing to show that your client was incredible. But, in fact, the BIA did find that your client had put on evidence that was not credible with respect to the Chinese student claim, and that cast lots of doubt on evidence that the BIA had no way of verifying on the asylum claim. Yes, Your Honor. Because the BIA, according to the case Manimba, the court warned BIA to dance around the credibility issue. So you have to make an express credibility finding. So by doing that, I think this alone would justify a remand to the BIA to make an express credibility finding, whether or not the receipts, the bank receipts, and also the bank receipts and also the envelopes, whether those would support an adverse overall. And the testimony from his friend, Mr. Lin. Yes, Your Honor. But, respondent, the petitioner did not rely upon Mr. Lin's testimony to support his presence. And also the inquiry judge actually accepted the petitioner's explanation of the concern the service had over the authenticity of the envelopes. But the BIA then turned around saying that those envelopes were forged. So in this sense, the petitioner was deprived of due process. Right. Because he was not put on notice that the BIA would reach a conclusion that those envelopes would be forged. Well, he did ask that, Akira. Look, the inquiry judge accepted because petitioner came up with additional evidence showing that the lack of verification mark would not be an indicator that the envelopes were forged. And the BIA, the judge. Wasn't there some testimony of an attempt to verify the remittance receipts and it couldn't be done? Yes, Your Honor. So the remittance receipts weren't forged? That's what that proves? And putting that aside, the envelopes. Why put it aside? Let's take it head on. Yeah. And then respondent, petitioner in this case, did whatever, in my opinion, whatever he could to verify the remittance receipts. And actually, the judge looked at those receipts and saying those look very genuine to her. And also, the judge accepted the petitioner's explanation that the envelopes were not forged. Whose findings are we dealing with? Are we dealing with the findings of the IJ or the BIA? We are dealing with the BIA's findings, Your Honor. But the BIA did not. In the case that I cited in my brief, because the IJ made a favorable credibility finding regarding the envelopes, so the BIA could not just turn around and then make an adverse credibility finding regarding the. . . I can say there's inadequate evidence to support it. Yes, they can say that. But that cannot come to the conclusion those evidence was forged. Counsel, we've used a lot of your time for questions, so we will restore some extra time for rebuttal, even though I used up your allotted moments. Ms. Redfern? I'd like you to begin by. . . I guess I have two issues with what the BIA has done here, and I appreciate your addressing both of these concerns. One is that, do you agree or disagree with the opposing counsel that in the absence of an adverse credibility finding, we. . . the testimony of the petitioner as true? I would agree that this was found in the absence of an expressed credibility finding that the court. . . testimony as true. Okay, that's our situation here. The other thing that concerned me was that the BIA relied heavily on what it referred to as the absence of detail. And that struck me as a curious thing to rely on. If someone is here and their spouse is in China and says, I was sterilized, I'm not sure what detail is. . . I mean, would you require someone to say, oh, well, just, you know, let me know all the details. How long were you anesthetized? Where were you? I mean, it sort of presupposes that you would put your spouse through the third degree, or otherwise. . . I guess I just had trouble with this supposed lack of detail and where that led, and it was relied upon so heavily. Well, Your Honor, this Court has required evidence in support of an asylum claim to be not only credible, but direct, persuasive, specific, and detailed. And the regulations, 208.13, regarding asylum claims, state that the testimony, if credible, may be sufficient to support a claim of asylum. Not that it always will be. And the petitioner in this case, basically, this is a claim of a Chinese national who claims that his wife was forcibly sterilized. And the regulations provide, or the statute provides, that Chinese nationals who have a claim of forcible sterilization may have a claim for persecution. But it can't be intended, that Congress intended, that a person, a Chinese national, can just come, take the stand, and say, I'm a Chinese national, and my wife was forcibly sterilized, and that's all the person has to do. And that's all that he did in this case, was he said, I'm a Chinese national, my wife, secondhand information from my wife, in the record. . . Well, the secondhandness of it is a different question. But let's say that the wife was there and testified, and all she said was, I was forcibly sterilized. And she's believed. She doesn't have to provide the date and the time and the place and all of that if she's not asked to. That's correct, but she's not the petitioner. Okay. She's not the applicant. But this petitioner was not asked to provide more detail about that specific part of his claim. And so I guess I found it troublesome that the BIA then, after he was not asked to elaborate, would then turn around and rely on the fact that he didn't elaborate, separate from the question of whether this third party should be believed. Well, first of all, the petitioner has never claimed that his due process rights were violated because he wasn't given notice that he had to provide more sufficient detail. I'm not asking you a due process question either. I'm asking about the logic of the BIA's decision where he gives what theoretically, at least, are sufficient statements. This is what happened. It falls into this category. And yet there's, I don't know, it just seemed illogical to me. But the petitioner is always on notice that he has to provide specific, detailed testimony in support of his claim. He's notified because of the board's decisions and NRAEP, which state that credibility is not dispositive. You still have to state details to furnish a context for your claim of asylum. And in this case, the petitioner only cites, the only thing that he testifies to is his claim of asylum, that he is Chinese. Well, under the statute, the only thing he has to prove is that he's from China and that his wife has been forcibly sterilized. That's the operative legal fact, correct? That is the operative legal fact. But it can have been Congress's intent in putting this into the statute and defining a refugee as a Chinese national who has undergone or has a fear that he or his wife will undergo a forcible sterilization, that all that person has to do is state the two facts, I'm a Chinese national and my wife was forcibly sterilized or I will be forcibly sterilized, especially when there's a cap on those type of asylum claims. There's only 1,000 of those per year. Well, that's a different question, whether the person is in line or isn't. I mean, if there's 50 of them or there's 5,000 of them, it's not really our problem. Well, it's an issue in this case because the board is entitled to be able to weed out those claims that it determines, while they may not be false, in other words, there's not an adverse credibility finding, there's not sufficient detail to furnish the context of their asylum claim. And there has to be more than just. I'm confused by your argument. Is it your contention that even if someone actually does fall within the statutory definition of a refugee for this purpose, that the BIA is entitled to take some of those cases out of the queue just by saying, well, we have a lot of these? No, Your Honor, and if I misspoke, I apologize. What I'm trying to state is, and it's the government's position, that the petitioner, specifically in these type of cases, has to do more than what the petitioner did in this case. The petitioner can't just simply state, I'm a Chinese national, my wife was forcibly sterilized, and then present evidence in support of that that's questionable, that's of second-hand nature. Okay, let's talk about that evidence then. What is insufficient about the photographs, the medical records, and the envelopes, which are the items that are in support of the asylum claim? What specifically is wrong with this? I believe the envelopes were in support of the adjustment application. I'm sorry. She had written him some letters, but I know he tore up the letter. That was his testimony. There are some envelopes at issue in the adjustment application as well. The evidence that the petitioner presented in support of his claim for asylum, in addition to his testimony, was an x-ray report and a photograph of his wife. I thought there was a third item. I believe that's all, Your Honor. Regarding those, the BIA found that those things were insufficient because they didn't establish that his wife, one, had been sterilized, two, had been forcibly sterilized, and there's no medical diagnosis to indicate the person had been sterilized. There's no evidence on the x-ray report stating the hospital where this took place. There's nothing that relates it to the petitioner's wife. You mean medical proof as opposed to diagnosis, don't you? Pardon me? You mean medical proof rather than medical diagnosis. Yes, Your Honor. But there's medical proof that the petitioner's wife, in fact, underwent a sterilization procedure at the hospital, and that was done without her consent. It was a forcible sterilization. Do you think that one could expect that to be in the hospital's records? Perhaps not in the hospital's records, but the records could indicate that she underwent sterilization. All that it indicated was that she had some type of blockage, and that's all that it indicated. So the board was entitled to disregard this evidence and find that it wasn't sufficient to support petitioner's asylum claim. The board discusses both the question of past persecution, finds that he hasn't met his burden there, and then goes on in the last paragraph to discuss future persecution and discusses the fact that he's returned to China no fewer than four times for approximately nine months. What's the relevance of that finding? Is that finding sufficient to sustain the BIA, even if we were inclined to disagree with you on the question of past persecution? Yes, Your Honor, because in this case, INA 101-A42 defines a refugee as a person who is unwilling or unable to return to their country because of past persecution or well-planned fear of future persecution. And the petitioner in this case, the evidence indicates in his passport and his testimony that he's returned to China no less than four times. This is not a refugee. If his wife was indeed forcibly sterilized, how can he be a refugee, a person unwilling or unable to return to his country? Does the fact of specific congressional legislation with respect to the Chinese sterilization procedures put this on any different footing? In other words, is it a per se grant of asylum if you've been forced to do this, even though the government is saying, look, once you've been sterilized, you have nothing further to do, you have nothing further to hear from us? Well, I believe you may be referencing the fact that it may be considered a continuing persecution if they've been forcibly sterilized once. It's enough. But in this case, if the petitioner has returned to his country, he can't be deemed a refugee if there indeed was a past sterilization and he has willingly returned to his country. He doesn't meet the definition of a refugee. And in regard to the future persecution, what the petitioner stated, his fear of returning to China, not that he would be forcibly sterilized or nothing relating to his wife's sterilization, but that he believed he would be detained or otherwise persecuted because he left the country without permission. And the evidence in the record indicating that he returned to his country four times without any problem, returned to his hometown and to his wife's residence, undermines any fear of future persecution. I'd like to just touch briefly on the adjustment of status application in my remaining 30 seconds. In this case, the Board did not abuse its discretion in denying the petitioner's application for adjustment of status because the petitioner, much like his asylum claim, failed to meet his burden of proof. He failed to establish the physical presence requirements for adjustment of status, specifically that he entered the United States prior to April 11, 1990. If there are no further questions, I see that my time is up. The respondent would respectfully request the Court to deny the petition for review. Thank you, counsel. Mr. Li, we used a lot of your time with questions. You may have two minutes for rebuttal. I'd like to focus on the well-founded fear factor of this case. Actually, petitioner can see that there's no well-founded fear in this case. Nevertheless, the Court should— Actually, the BIA in YTL addressed this issue, and the BIA recognized the special nature of the case here. In YTL, in that case, a Chinese national, his wife was also forcibly sterilized. The BIA said, on the one hand, clearly the applicant suffered past persecution. On the other hand, there's no future fear of persecution. There's no fear of future persecution because a person— In this case, the petitioner's wife was sterilized. She will not be sterilized again. Because his wife was sterilized, petitioner would not be sought out for sterilization. So therefore, the BIA in YTL says that the keys to resolving this dilemma are to recognize the special nature of the persecution at the issue here, and to give full force to the intent of Congress in extending asylum to those who have sustained such persecution. So the BIA in more uncertain terms states, it is manifestly clear that Congress intended to make eligible for asylum those who are victims of China's coercive family planning policy, not simply those who could be victims if returned to China. So if petitioner was to be believed that he suffered past persecution, he would automatically qualify as a refugee under the current scheme of law. Therefore, denying the petitioner's asylum application in absence of well-founded fear would frustrate the clear congressional intent in protecting the victims of the Chinese coercive population control program. Thank you, counsel. Again, we very much appreciate the arguments of both counsel. It's been very helpful. The case just argued is submitted, and we will stand adjourned for this morning's session. All rise. Please use your briefs. This session is adjourned. Please close the field for the next round of hearings. Thank you. Thank you. Yes. One. Hold now. One to go.
judges: Breezer Graber, Bybee